UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| THOMAS D. ARTHUR, | ] | |
| | ] | |
| Petitioner, | ] | |
| | ] | |
| vs. | ] | CV-01-N-0983-S |
| | ] | |
| MICHAEL HALEY, Commissioner, | ] | |
| Alabama Department of | ] | |
| Corrections,, | ] | |
| | ] | |
| Respondent. | ] | |

**Memorandum of Opinion**

This is an action for habeas corpus relief under 28 U.S.C. § 2254 by an Alabama state prisoner under a sentence of death. On December 4, 2002, this court entered its opinion and order denying Arthur's petition, concluding that his failure to file his petition within the one-year period imposed by The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") could not be excused because he did not show he was actually innocent of the crime for which he was convicted[1] and he otherwise failed to establish he was entitled to statutory or equitable tolling of the one-year limitations period. This court also denied Arthur's "Motion for Leave to Conduct Discovery." (Doc. 33.) The cause is presently before the court for consideration of Arthur's "Motion to Alter or Amend Judgment," filed December 18, 2003. (Doc. 57.) Arthur claims the court erred in failing to permit discovery on the threshold questions of actual innocence and equitable and statutory tolling. The motion has

---

[1] Arthur was tried, convicted and sentenced to death for the murder of Troy Wicker.

been fully briefed by the parties and is ready for submission. Upon due consideration, the motion will be DENIED.

Arthur seeks discovery of certain physical evidence and an evidentiary hearing to get testimony from lately-proffered witnesses who claim knowledge of his whereabouts on the date of Troy Wicker's murder. He claims the evidence may support his gateway claim of actual innocence. This court has previously denied his requests. (Doc. 55, pp. 5-8, 15.)

A habeas petitioner is not entitled to discovery as a matter of course. *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Rule 6(a) of the Rules Governing § 2254 Cases provides:

> A party shall be entitled to invoke processes of discovery available under Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.

A demonstration of "good cause" requires "specific allegations" showing reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to habeas relief. *Id.* at 908-09. Furthermore, "[i]n passing AEDPA . . . Congress modified the discretion afforded to the district court and erected additional barriers limiting a habeas petitioner's right to discovery or an evidentiary hearing." *Isaacs v. Head*, 300 F.3d 1232, 1248-49 (11th Cir. 2002) (applying the diligence standard of 28 U.S.C. § 2254(e)(2) to petitioner's request for discovery and evidentiary hearing). *See Williams v. Taylor*, 529 U.S. 420 (2000). Section 2254(e)(2), which governs hearings under AEDPA, provides, in pertinent part:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that
> (A) the claim relies on–

2

> (i) A new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

Section 2254(e)(2) applies only when "the applicant has failed to develop the factual basis of a claim in State court proceedings." *Id.* Thus, a prisoner can avoid application of § 2254(e)(2) by showing he was diligent in his efforts to discover the facts. *Williams*, 529 U.S. at 434-35. Arthur cannot satisfy this threshold inquiry.

The physical evidence Arthur seeks to test includes Judy Wicker's bloody clothing, a rape kit created the day of the murder, a wig and hair samples from the Wicker residence, the bullet removed from the victim's body, spent cartridge casings found at the murder scene, and a pillowcase found beneath the victim's head. None of this evidence is new or was unknown to Arthur during the state court proceedings. Arthur belatedly claims he diligently sought to test this evidence during the state court proceedings, and points to a motion made by counsel at his third trial, seeking "[a]ll clothing taken as evidence from . . . any person," and "[a]ll other physical evidence taken by the state from the scene of the alleged crime or from any victim as part of its investigation in this case, including but not limited to, seminal fluid, spent bullets, bullet casings, and so forth."[2] However, he has not

---

[2] "Motion to Inspect, Examine, and Test Physical Evidence," dated July 5, 1991, cited at n.1, "Thomas D. Arthur's Motion to Alter or Amend Judgment," Doc. 57.

shown that he pursued this request any further.[3] A similar one-time request was found to be insufficient evidence of diligence in *Williams v. Taylor*, 529 U.S. at 439-40.

Arthur has not pointed to any record of an attempt in state court to show that Alphonso High, Ray Melson, or Billy Peebles had information about his whereabouts on the morning of Troy Wicker's murder.[4] He does not contend that he was previously unaware that these men might have knowledge of his whereabouts on the day of the murder, and to do so would be incredible since the testimony now proffered would be that he was in their company on that day. Again, this claim was known to Arthur, but not diligently pursued in state court.[5]

When a habeas petitioner fails to "make a reasonable attempt, in light of information available at the time, to investigate and pursue claims in state court," he may not obtain discovery or an evidentiary hearing unless he satisfies the requirements in the balance of § 2254(e)(2). *Williams*, 529 U.S. at 440. Arthur has not attempted to show that he can satisfy

---

[3] Testimony about the bullet, casings, wig and hair samples was received at Arthur's third trial. *See Memo. Opinion*, Doc. 55, pp. 10-12. There is no indication that the defense pursued any claim regarding testing of the these or other materials during the subsequent state court proceedings. *Arthur v. State*, 711 So. 2d 1031, 1047, 1065, 1068-69 (Ala. Cr. App. 1996). DNA testing was available in Alabama before Arthur's third trial in 1991. *See, e.g., Dubose v. State*, 662 So. 2d 1156 (Ala. Cr. App. 1993).

[4] The court notes that, in conjunction with a request for continuance, Arthur made a non-specific claim that other witnesses needed to be examined. He did not specifically name any witness. *Arthur*, 711 So. 2d at 1068-69. Arthur has not pointed to any place in the state court record that would evidence a previous attempt to obtain testimony from these affiants.

[5] The court has considered Arthur's renewed arguments that the affidavits are sufficient to support his gateway claim of actual innocence, and finds no reason to change its initial conclusion that the affidavits were not the "new, reliable evidence" required by *Schlup v. Delo*, 513 U.S. 298 (1995). Arthur offers no explanation for his long delay in submitting this evidence. Although he claims his counsel was constitutionally deficient, he has not pointed to any single instance in any of his three trials or in any of his appeals in which he informed a state court of the existence of these witnesses. Specifically, the court notes that Arthur substantially participated in the presentation of his defense at the third trial and he had many exchanges with the trial court, but he did not tell the court that he knew of relevant alibi witnesses his attorneys failed to investigate.

the requirements of Subparagraph (A), and there is no evidence that the discovery he is seeking relates to a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable or a factual predicate that could not have been previously discovered through the exercise of due diligence." Neither has he met the additional requirements of Subparagraph (B), by showing that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."[6]

Furthermore, if Rule 6(a) applies rather than Section 2254(e)(2), Arthur's conjectures about the relevance of the evidence to his claim of actual innocence fall far short of "specific allegations showing reason to believe" that the fully developed facts might entitle him to relief. *Bracy,* 520 U.S. at 908-09. Arthur seeks DNA testing of the blood on Judy Wicker's clothing, stating that he wants to show her assailant was someone other than him, but he offers no "reason to believe" that the blood on Judy Wicker's clothing came from anyone other than Judy Wicker. Arthur seeks to examine the "afro" wig and Negroid hair samples taken from Judy Wicker's car, contending testimony that the hair was forcibly removed and the inside of the wig was free of

---

[6] Relying on *O'Neal v. Lampert*, 199 F. Supp. 2d 1064 (D. Oregon 2002), Arthur argues that the *Schlup v. Delo* "more likely than not" standard should apply to his discovery requests because he is seeking discovery to establish his "gateway" claim of actual innocence. Although the *O'Neal* court made a distinction, for discovery purposes, between claims on the merits and claims brought to toll the statute of limitations, it did not offer any explanation for doing so. The Eleventh Circuit has recognized that discovery in habeas cases, previously pursued under *Bracy* and Rule 6(a) of the Rules Governing § 2254 Cases, was further limited by AEDPA. *Isaacs v. Head*, 300 F.3d 1232, 1248-49 (11th Cir. 2002) (discussing *Bracy* and Rule 6(a) and adding, "[i]n passing AEDPA, however, Congress modified the discretion afforded to the district court and erected additional barriers limiting a habeas petitioner's right to discovery or an evidentiary hearing.") *See also Crawford v. Head*, 311 F.3d 1288 (11th Cir. 2002) (same). Nothing in § 2254(e)(2), *Isaacs*, or *Crawford* supports Arthur's claim that § 2254(e)(2) does not apply to his discovery for "gateway" claims. Indeed, such an interpretation would appear to be contrary to the purposes of AEDPA. Moreover, this court is satisfied that the proposed discovery would not yield evidence showing Arthur's factual innocence even under the more lenient "more likely than not" standard. Accordingly, this court concludes *O'Neal v. Lampert* is not persuasive.

hair was inconsistent with Wicker's testimony that Arthur wore a black wig to disguise himself. While there has been no explanation for the hair found in the car and the lack of hair in the wig, the findings are not inconsistent with Wicker's testimony. Further, Arthur offers no "reason to believe" his examination would reveal anything other than what is already established, and therefore, there is no "reason to believe" his examination could show he is "more than likely" innocent.

Arthur seeks access to the bullet recovered from Troy Wicker's body and four spent cartridge casings found at the scene, claiming Patricia Green's testimony that she sent a third party to purchase .22 mini magnum long rifle bullets for Arthur on the day before the murder was insufficiently corroborated by the ballistic expert's testimony that the recovered bullet was a .22 long rifle caliber consistent with a CCI brand mini mag and the four shell casings were CCI brand .22 long or long rifle casings. But, Green's testimony was consistent with the testimony of the ballistic expert and does not require corroboration. Moreover, Arthur does not offer "reason to believe" that his examination of the bullet and casings will reveal any different information from that already discovered by the experts.

Arthur seeks access to a gunpowder-tainted pillowcase and crime scene photographs arguing he must resolve an inconsistency between the ballistic expert's testimony and the autopsy report regarding the "critical issue" of whether the gun was fired at close or far range. However, he offers no explanation for his conclusory claim that this discrepancy is "critical" to his claim of actual innocence. He implies that he might be able to impeach Judy Wicker's testimony that her husband was sleeping when he was shot, but Wicker did not testify about the distance from which Troy Wicker was shot.

6

Arthur seeks to test Judy Wicker's rape kit. He alleged in his initial motion and in his present motion that Judy Wicker previously testified a "black man" forced his way into her home, beat her, raped her, and killed her husband, but he did not point to any evidence of record that supports his assertion. (Doc. 33, 57.) This court's review of the published opinions and the transcript of Arthur's last trial did not uncover any testimony that Judy Wicker was raped or that she had sexual intercourse on the morning of her husband's murder. Arthur has not offered any reason to believe that testing the rape kit would help show he was "more likely than not" actually innocent of Troy Wicker's murder. Similarly, Arthur has not explained how examination of vacuum sweepings of the Wicker home could show he is "more likely than not" actually innocent.

Finally, none of the physical evidence can help Arthur establish his gateway claim of actual innocence because such a claim must rest on "new reliable evidence" which was "not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Although Arthur claims some of the items were not tested, he does not claim or show that the items or proposed tests were unavailable at the time of his trial. Many of the items were admitted at trial. Thus, this evidence is not "new" as required by *Schlup*.

Arthur also seeks discovery of material regarding the availability of law library facilities at Holman Prison, contending that the AEDPA statute of limitations should be equitably tolled because the death row law library did not have a copy of the new statute. The AEDPA statute of limitations can be tolled until "the date on which [an] impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action." 28 U.S.C. §

2244(d)(1)(B). As discussed in the initial opinion, Arthur did not show he suffered any "actual injury" resulting from the Holman Prison library facilities.[7] (Doc. 55, pp. 19-20.) *Lewis v. Casey*, 518 U.S. 343, 351, 355 (1996)(inmate does not have abstract, free-standing right to a law library and must show "actual injury" in that the alleged shortcomings hindered his efforts to pursue a nonfrivolous legal claim). Like the petitioner in *Helton v. Secretary for the Department of Corrections*, 259 F.3d 1310 (11th Cir. 2001), Arthur claims only that the Holman death row library is deficient and makes no specific allegations about his attempts to otherwise ascertain the applicable statute of limitations. (Arthur Affidavit, Doc. 36.) The discovery he seeks[8] may or may not reveal shortcomings in the Holman library system, but it will not lead to information about the efforts Arthur made to ascertain his rights, which is an essential element lacking in his constitutional claim. There is no "good cause" for discovery when the proposed discovery is

---

[7] The State provided evidence that the "death row" library no longer existed and that death row inmates had access to a general population library containing a current United States Code. The court previously noted that Arthur did not dispute this evidence but limited his argument to a claim that the death row library was inadequate. Arthur now contends that he failed to rebut the evidence because his affidavit was submitted before the State's submission of evidence. (Doc. 57, p. 8.) However, Arthur had an opportunity to reply to the State's submission and this court accepted other evidence Arthur offered in connection with his reply. He offers no explanation for his failure to submit a responsive affidavit or to otherwise dispute the State's evidence about the library at Holman Prison. Arthur has never stated that he was unaware of the availability of the general library.

[8] Arthur seeks to discover "documents covering the period from 1998 through 2000 and concerning (1) books and other written materials carried by the (death row) library, including their titles, volumes, versions, copyright dates, and number of copies; (2) the organization and categorization of books and written materials carried by the library; (3) federal habeas corpus statutes carried by the library, including amendments, volumes, titles, and sections; (4) the budget of the death row library, including itemizations of funds earmarked for books, staffing, repairs to the premises, and other expenses; (5) the number of typewriters, photocopying machines, stamps, paper and pens available to death row inmates, including their costs and complaints about malfunctions, and the schedule of mail pickup and delivery; (6) any activities or services located in or available at the death row library not directly related to reading, writing, and research; (7) the schedule and hours during which the library can be accessed, and the number of death row inmates who have accessed the library, including any unsuccessful attempts; and (8) document retention or destruction policies of Holman in effect from January 1, 1998 to the present." Doc. 33, attached memo., pp. 12-13.

8

not aimed at obtaining evidence to support a constitutional claim. *Bracy v. Gramley*, 520 U.S. 898, 905-06 (1997).

Upon reconsideration, the court finds no reason to alter its previous decision in this matter. Accordingly, Arthur's "Motion to Alter or Amend Judgment," filed December 18, 2003, will be denied by separate order.

Done, this ___4+___ of ~~May~~ June, 2003.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

9