FILED

2012 Jun-20  AM 10:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| THOMAS D. ARTHUR, | ] | |
| | ] | |
| Petitioner, | ] | |
| | ] | |
| vs. | ] | 2:01-CV-0983-LSC |
| | ] | |
| KIM TOBIAS THOMAS, | ] | |
| COMMISSIONER, | ] | |
| ALABAMA DEPARTMENT OF | ] | |
| CORRECTIONS, | ] | |
| | ] | |
| Respondent. | ] | |

MEMORANDUM OF OPINION

## I.    Introduction.

On May 1, 2012, Petitioner Thomas D. Arthur ("Arthur") moved this Court for relief from the prior judgment dismissing his petition for a writ of habeas corpus pursuant to Rule 60(b) of the Federal Rules of Civil Procedure based upon the operation of *Martinez v. Ryan*, --- U.S. ----, 132 S. Ct. 1309 (2012).  This Court has received and considered submissions by Arthur, as well as Respondent Kim Tobias Thomas, Commissioner of the Alabama Department of Corrections ("Commissioner").  The motion is denied.

## II.    Background.

Arthur has been convicted and sentenced to death for the capital murder of Troy Wicker in three separate state proceedings.  His first conviction and sentence was reversed by the Alabama Supreme Court on April 5, 1985.  *Ex parte Arthur*, 472 So. 2d 665 (Ala. 1985) (details of a prior murder committed by Arthur—shooting the victim in the right eye—were held to have been improperly admitted for identification purposes despite the fact that Troy Wicker was also shot in the right eye).[1]  Arthur's second conviction and sentence was reversed by the Alabama Court of Criminal Appeals on May 25, 1990.  *Arthur v. State*, 575 So. 2d 1165 (Ala. Crim. App. 1990) (trial court improperly admitted a statement Arthur made to a police officer in the absence of counsel when such statement had been made more than two weeks after he asserted his right to remain silent).

Arthur's last conviction and sentence was affirmed by the Alabama Supreme Court on November 21, 1997.  *Ex parte Arthur*, 711 So. 2d 1097 (Ala. 1997).  The Alabama Supreme Court denied Arthur's application for rehearing on March 20, 1998.  On April 7, 1998, the Alabama Court of Criminal Appeals issued a certificate of judgment.  (Petitioner's brief at 5.)  Arthur did not petition the Supreme Court of

---

[1] Arthur was convicted of the 1977 murder of Eloise Bray West, the sister of his common-law wife, where he shot her in her right eye.  *Ex parte Arthur,* 472 So. 2d 665, 669 (Ala. 1985).

the United States for a writ of certiorari following the affirmance of his third conviction and sentence but did send the Supreme Court a pro se letter dated June 8, 1998. (Doc. 36, Ex. A, B.)  In his letter, Arthur requested that the Supreme Court extend the 90-day time period for him to file a petition for a writ of certiorari.  The Clerk of the Supreme Court responded on June 19, 1998, notifying Arthur that he needed to include a copy of the lower court opinion and that he needed to serve a copy of his request for an extension on the opposing counsel.  (*Id.*, Ex. B.)  The Clerk also explained in his letter that the maximum allowable extension was for sixty days.  (*Id.*)  Arthur did not respond to the Supreme Court Clerk's notice of deficiency.

On September 15, 2000, the State of Alabama ("the State") filed an "Amended Motion to Set Execution Date" in the Supreme Court of Alabama.  (Doc. 46, Ex. 1.)  On January 25, 2001, Arthur, proceeding with the assistance of counsel, filed a Rule 32 petition—his first collateral challenge to his affirmed conviction and sentence.  Arthur's petition was dismissed by the trial court as untimely on March 5, 2001.  (Doc. 47, Ex. 4.)  The Alabama Court of Criminal Appeals affirmed the dismissal on April 25, 2001.  *Arthur v. State*, 820 So. 2d 886 (Ala. Crim. App. 2001).  The Alabama Supreme Court denied Arthur's petition for a writ of certiorari on November 2, 2001.

(Doc. 49.)  The U.S. Supreme Court denied his petition for a writ of certiorari on May 13, 2002.  *Arthur v. Alabama*, 535 U.S. 1053 (2002).

Failing his first state collateral challenge, Arthur filed the above-styled federal habeas action pursuant to 28 U.S.C. § 2254, on April 20, 2001.  The petition was originally assigned to United States District Judge Edwin Nelson, who dismissed the petition on December 4, 2002, opining that it was barred by the limitations period of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  In his petition, Arthur maintained that the limitations period should not have been applied to bar the consideration of his petition because he was "actually innocent of the crime for which he was thrice convicted.  Arthur further [claimed that] he [was] entitled to statutory or equitable tolling of the one-year limitations period."  (Doc. 55 at 5.)

Arthur's assertion of actual innocence rested substantially upon the affidavits of Alphonso High, Ray Melson, and Billy Peebles, which were submitted by Arthur as exhibits. (*Id*. at 12.)  The State acquired subsequent statements of the three affiants that brought the original versions into serious question. (*Id*. at 12-14.)  The Court found that each of the affidavits submitted by Arthur lacked the required reliability to cast doubt on the jury's verdict.  The Court further concluded that Arthur had made no attempt to diligently pursue his alibi claim in state court.  The  Court also pointed

out that despite the fact that "[h]is whereabouts at the time of Troy Wicker's murder was singularly within Arthur's knowledge . . . he never made this claim or presented this evidence to any state court." (*Id.* at 15.)  The Court agreed that "an otherwise barred petition should be reviewed to avoid a miscarriage of justice when the petitioner presents sufficient evidence of his actual innocence," but found that Arthur had failed to demonstrate his actual innocence.  (*Id.* at 9.)

In finding that statutory tolling was inapplicable, the Court recognized that the AEDPA statute of limitations could be tolled.  The Court acknowledged that the limitations period could be tolled until "the date on which [an] impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action." (*Id.* at 15 (quoting 28 U.S.C. § 2244 d)(1)(B)).) However, the Court found that Arthur did "not establish[] that he was actually injured by Alabama's scheme for providing inmates access to the courts." (*Id.* at 20.)  Arthur failed to demonstrate that he had inadequate access to library facilities.  (*Id.*) In response to Arthur's contention that *Coleman v. Thompson*, 501 U.S. 722, 755-56 (1991), "requires appointment of post-conviction counsel when, as in his case, the post-conviction proceedings are the first opportunity to raise claims of ineffective

assistance of trial and appellate counsel," the Court cited Rule 32.7(c) of the Alabama Rules of Criminal Procedure.  (Doc. 55 at 17-18.)  As the Court explained, "Arthur did not avail himself of the Alabama procedures for obtaining post-conviction counsel and thus cannot show he would not have obtained representation if he had made a request under Rule 32.7."  (*Id.*)  The Court summarized its conclusions on this point: "the State did not place any unconstitutional impediment to Arthur's filing of his federal habeas petition sufficient to statutorily toll the AEDPA limitations period."  (*Id.* at 20.)

Finally, the Court turned to Arthur's argument for equitable tolling of the limitations period, pointing out that such relief required a showing of "extraordinary circumstances that are both beyond his control and unavoidable even with diligence."  (*Id.* at 21 (quoting *Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000)).)  Arthur proffered that his failure to timely file his habeas petition was "due to the State's failure to provide him with notice, legal assistance, visits from investigators who wanted to help him, or adequate law library facilities."  (*Id.*)  Each purported reason was considered, addressed, and rejected.  (Doc. 55.)

On December 18, 2002, Arthur filed a motion pursuant to Rule 59(e) of the Federal Rules of Civil Procedure to alter or amend the December 4, 2002, dismissal.

Before he could rule on the motion, Judge Nelson died and the action was reassigned to the undersigned for subsequent proceedings.  On June 5, 2003, this Court denied Arthur's Rule 59(e) Motion and then Arthur appealed that ruling to the United States Court of Appeals for the Eleventh Circuit.  That court affirmed the dismissal of Arthur's petition on June 21, 2006.  *Arthur v. Allen*, 452 F.3d 1234 (11th Cir. 2006).[2] Arthur's petition for a writ of certiorari with the Supreme Court of the United States was denied on April 16, 2007.  *Arthur v. Allen*, 549 U.S. 1338 (2007).

Arthur was then scheduled to be executed on July 31, 2008, but he filed a "Motion for Access to DNA Evidence Before July 31, 2008, Execution" in the Alabama Supreme Court.  *Arthur v. State*, 71 So. 3d 733, 738 (Ala. Crim. App. 2010). That motion was denied on July 29, 2008.  *Id.*  Arthur then filed an "'Emergency Successive Petition for Relief from Conviction Pursuant to Rule 32 of the Alabama Rules of Criminal Procedure' and an 'Emergency Motion for Stay of Execution and Access to DNA Evidence Based on Newly Discovered Facts That Completely Exonerate Thomas D. Arthur' in the [trial] court."  *Id.*  The stay was granted by the Alabama Supreme Court on July 30, 2008.  "Thereafter, the [state] circuit court conducted evidentiary hearings regarding Arthur's Rule 32 petition and ordered some

---

[2] The Eleventh Circuit subsequently modified its opinion by adding language to its discussion of Arthur's entitlement to a hearing and discovery. *Arthur v. Allen*, 459 F.3d 1310 (11th Cir. 2006).

DNA testing.  Afterward, it entered an order in which it thoroughly addressed each of Arthur's claims" and denied his petition.  *Id.*

In his second collateral challenge to his third conviction and sentence, Arthur asserted that he was innocent of murdering Troy Wicker as demonstrated by what he described as newly discovered evidence—the confession of Bobby Ray Gilbert ("Gilbert"), a fellow inmate, who claimed to have been the one who actually committed the murder of Troy Wicker. *Id.* at 738-39.  However, the state circuit court found after extensive evidentiary proceedings, including the court ordering and considering the results of DNA testing of evidence found at the original crime scene, that Gilbert and Arthur had conspired to commit perjury by submitting Gilbert's false confession to the court.  *Id.* at 739-41.  The state trial court determined that "the overwhelming evidence and testimony presented before [the] Court established that Gilbert lied, that his affidavit [was] false, and that he had no role in the murder of Troy Wicker. [That] court further [found] that the evidence presented demonstrate[d] that both Gilbert and Arthur engaged in an attempt to defraud [that] Court by means of the affidavit made the subject of [that] Rule 32, in which Gilbert [took] credit for the murder of Troy Wicker." *Id.* at 740-41.

In arriving at its conclusion, the state circuit court noted that:

> During the hearing, the State presented extensive evidence, particularly through the testimony of its inmate witnesses, which clearly indicated that the affidavit of Gilbert was prepared with Arthur's assistance.   The State offered evidence that Arthur arranged for numerous notes to be transported and delivered to Gilbert while both were incarcerated in Holman Prison.   Through these notes, Arthur was able to feed Gilbert facts about the murder of Troy Wicker to enable Gilbert to have information to create his affidavit.

*Id.* at 739.

Arthur appealed the denial of his successive Rule 32 Petition to the Alabama Court of Criminal Appeals, which affirmed the denial on April 30, 2010.  *Id.* at 738. His petition for a writ of certiorari from the Alabama Supreme Court was denied on April 15, 2011, and Arthur's petition for a writ of certiorari from the U.S. Supreme Court was denied on October 17, 2011.  *Arthur v. Alabama*, 132 S. Ct. 453 (2011).

On June 8, 2011, Arthur filed, pursuant to 42 U.S.C. § 1983, an action in the United States District Court for the Middle District of Alabama challenging the method of execution then utilized by the State.  While that action was pending, the State filed a motion  on October 25, 2011, to reset Arthur's execution date with the Alabama Supreme Court.  The Middle District Court dismissed Arthur's challenge on November 3, 2011.  *Arthur v. Thomas*, 2011 WL 5294656 (M.D. Ala. 2011).

On appeal, the United States Court of Appeals for the Eleventh Circuit reversed the dismissal of Arthur's challenge of the State's method of execution and remanded it to the United States District Court for the Middle District of Alabama for further factual development. *Arthur v. Thomas*, 674 F.3d 1257 (11th Cir. 2012). Arthur's challenge to the State's method of execution remains pending.

## III.   Discussion.

A.     Prohibition of Successive Habeas Petition.

The Commissioner argues that Arthur's 60(b) Motion is actually a successive habeas petition and thus cannot be considered by this Court.  "Before a second or successive application permitted by . . . section [2254] is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application."   28 U.S.C. § 2244(b)(3)(A).  "[F]or purposes of § 2244(b) an 'application' for habeas relief is a filing that contains one or more 'claims.'" *Gonzalez v. Crosby*, 545 U.S. 524, 530 (2005).

Arthur did not obtain an order from the United States Court of Appeals for the Eleventh Circuit before filing his pending motion.  Therefore, this Court must first determine if his motion actually presents a claim and thus should be treated as a successive habeas petition. *See id*.  While Arthur certainly makes arguments in his

motion that appear to reassert his previously filed claims and may even assert new support for those claims, this Court understands that through such argument, Arthur is attempting to satisfy the "substantial claim of ineffective assistance" requirement of *Martinez* in challenging this Court's previous ruling on the AEDPA statute of limitations.[3]

The *Gonzalez* Court recognized that "when a Rule 60(b) motion attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings," it does not constitute a successive habeas petition. *Id*. at 532. Therefore, the Court will address Arthur's Rule 60(b) Motion without requiring him to first obtain an order from the United States Court of Appeals for the Eleventh Circuit.

B.     Rule 60(b) Motion.

Arthur bases his motion on Rule 60(b)(6),[4] which requires a showing of "'extraordinary circumstances' justifying the reopening of a final judgment." *Id*. at

---

[3] A Rule 60(b) motion challenging "only the District Court's previous ruling on the AEDPA statute of limitations . . . is not the equivalent of a successive habeas petition." *Gonzalez,* 545 U.S. at 535.

[4] While Arthur does not specify which of the six grounds delineated in Rule 60(b), the Court assumes that he relies upon the only one that seems possible—"any other reason that justifies relief."

535.  As recognized by the U.S. Supreme Court, "[s]uch circumstances will rarely occur in the habeas context."  *Id.*

Arthur contends that the Supreme Court, in *Martinez*, "announced a change in law that excuses [his] failure to file within the statute of limitations."  (Pet'r Br. at 7.)  He argues that "[a] change in law combined with extraordinary circumstances justifies [relief under to Rule 60(b)(6)]."  (*Id.* at 15.)  Arthur maintains that his seeking to "vindicate his constitutional right to effective counsel" is a sufficient showing of extraordinary circumstances.  (*Id.*)

Clearly a change in the law, by itself, is not an "extraordinary circumstance" under Rule 60(b).  In the words of the U.S. Supreme Court, "[i]t is hardly extraordinary that subsequently, after petitioner's case was no longer pending, this Court arrived at a different interpretation."  *Gonzalez*, 545 U.S. at 536.

As if the words of the Supreme Court require further support, Beunka Adams, facing imminent execution, sought to have his execution stayed while he prosecuted a Rule 60(b)(6) motion based upon *Martinez*, also asserting his intention to, as Arthur puts it, "vindicate his constitutional right to effective counsel."  *Adams v. Thaler*, — F. 3d —, 2012 WL 1415094 (5th Cir. April 25, 2012).  The court explained that:

> In his Rule 60(b)(6) motion, Adams stated that the district
> court relied on Coleman to conclude that Adams's

ineffective assistance of trial and appellate counsel claims were procedurally defaulted and that ineffective assistance of state post-conviction counsel could not constitute cause to excuse the default. Adams asserted that, since the district court's judgment, the Supreme Court had decided *Martinez*, which created an exception to Coleman's holding that ineffective assistance of state habeas counsel cannot constitute cause to excuse procedural default. Adams argues that *Martinez* constitutes "extraordinary circumstances" entitling him to Rule 60(b)(6) relief.

*Id.* at *3.

The Fifth Circuit then went on to conclude:

In denying Adams's initial federal habeas petition, the district court correctly determined that Adams's claims were procedurally defaulted pursuant to the then-prevailing Supreme Court precedent of *Coleman*. The Supreme Court's later decision in *Martinez*, which creates a narrow exception to *Coleman's* holding regarding cause to excuse procedural default, does not constitute an "extraordinary circumstance" under Supreme Court and our precedent to warrant Rule 60(b)(6) relief. *See Gonzalez*, 545 U.S. at 536, 125 S.Ct. 2641; *Bailey*, 894 F.2d at 160. The *Martinez* Court's crafting of a narrow, equitable exception to *Coleman's* holding is "hardly extraordinary." *Gonzalez*, 545 U.S. at 536, 125 S.Ct. 2641; *see also Martinez*, 132 S.Ct. at 1320 ("The rule of *Coleman* governs in all but the limited circumstances recognized here.").

Because the *Martinez* decision is simply a change in decisional law and is "not the kind of extraordinary circumstance that warrants relief under Rule 60(b)(6)," Adams's 60(b)(6) motion is without merit.

*Id.* at *7.

Thus, the Fifth Circuit vacated the district court's stay of execution. The Supreme Court, in turn, refused to stay Adam's execution. *Adams v. Thaler*, 2012 WL 1435301 (U.S. April 25, 2012).

Arthur attempts to cure the patent insufficiency of his purported "extraordinary circumstances" by adding that he is seeking to "vindicate his constitutional right to effective counsel." (Pet'r Br. at 15.) This is a nonstarter. Considering that most habeas petitions consist of a list of allegations of how the petitioner's previous counsel was ineffective, there is nothing extraordinary about Arthur's claim of such. *See, e.g.*, *Adams*, 2012 WL 1415094. Further, if a change in the law, combined with an allegation of ineffective counsel, is sufficient to constitute "extraordinary circumstances," it will be hard to imagine a previously adjudicated habeas action that will not be the subject of continuous review. The requirement of extraordinary circumstances maintains the appropriate balance between "the policy of the law to favor a hearing of a litigant's claim on the merits" and "the desire to achieve finality in litigation." *Lussier v. Dugger,* 904 F.2d 661, 667 (11th Cir. 1990) (quoting 11 C. WRIGHT, A. MILLER & M. K. KANE, FEDERAL PRACTICE AND PROCEDURE § 2857 at 159).

Even if *Martinez,* combined with Arthur's ultimate goal of challenging the sufficiency of the representation he previously received, could constitute "extraordinary circumstances" so as to warrant relief from a long-standing judgment, it is not clear that *Martinez* amounts to a change in the law that is applicable to Arthur's situation.

In explaining his logic, Arthur first notes that the "Supreme Court held that where, under state law, ineffective assistance of trial counsel claims must first be raised in a collateral proceeding, a procedural default will not bar a federal habeas court from hearing those claims if, in the collateral proceeding, there was no counsel or counsel was ineffective." (Pet'r Br. at 8 (citing *Martinez*, 132 S. Ct at 1315).) Arthur then extrapolates "[b]ecause Mr. Arthur's habeas petition raised a claim of ineffective assistance of trial counsel, and he was not represented in his initial-review collateral proceeding, *Martinez* requires this Court to reconsider its 2002 judgment denying such claim as procedurally barred." (Pet'r Br. at 8.) One problem with this argument is that Arthur **was in fact represented** in his initial-review collateral proceeding. *Arthur*, 452 F.3d at 1242. That is not, however, the only difficulty the Court has with Arthur's position.

In *Martinez*, the petitioner's postconviction counsel failed to assert a claim of ineffective trial counsel in the first state collateral challenge to the conviction. *Martinez*, 132 S. Ct. at 1314. After his first collateral challenge was dismissed and affirmed on appeal, Martinez obtained new counsel and filed a second state collateral challenge—this time asserting that his trial counsel had provided him ineffective assistance. *Id.* That challenge was "dismissed, in part in reliance on an Arizona Rule barring relief on a claim that could have been raised in a previous collateral proceeding." *Id.*

Martinez then filed a habeas petition in federal district court which was dismissed based upon the doctrine of procedural default:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule.

*Id.* at 1316.

"In order to serve as the basis for a procedural bar in federal habeas proceedings, a state rule must be firmly established and regularly followed." *Hurth v. Mitchem*, 400 F.3d 857, 858 (11th Cir. 2005). In *Martinez*, there "[was] no dispute that Arizona's procedural bar on successive petitions [was] an independent and adequate state ground." *Martinez*, 132 S. Ct. at 1316. However, "[t]he doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

"Martinez had not shown cause to excuse the procedural default, the District Court reasoned, because under *Coleman v. Thompson*, 501 U.S. 722 (1991), an attorney's errors in a postconviction proceeding do not qualify as cause for a default." *Martinez*, 132 S. Ct. at 1315. The *Coleman* Court concluded that "because the attorney is the prisoner's agent . . . under 'well-settled principles of agency law,' the principal bears the risk of negligent conduct on the part of his agent." *Id.* at 1316. However, in *Martinez*, the Court expressed its concern that "if counsel's errors in an initial-review collateral proceeding do not establish cause to excuse the procedural

default in a federal habeas proceeding, no court will review the prisoner's claims."

*Id.* The Court went on to explain:

> As *Coleman* recognized, an attorney's errors during an appeal on direct review may provide cause to excuse a procedural default; for if the attorney appointed by the State to pursue the direct appeal is ineffective, the prisoner has been denied fair process and the opportunity to comply with the State's procedures and obtain an adjudication on the merits of his claims. Without the help of an adequate attorney, a prisoner will have similar difficulties vindicating a substantial ineffective-assistance-of-trial-counsel claim. . . . To present a claim of ineffective assistance at trial in accordance with the State's procedures, then, a prisoner likely needs an effective attorney.
>
> The same would be true if the State did not appoint an attorney to assist the prisoner in the initial-review collateral proceeding. The prisoner, unlearned in the law, may not comply with the State's procedural rules or may misapprehend the substantive details of federal constitutional law.

*Id.* at 1317 (internal citations omitted).

In order to resolve this issue, *Martinez* carved out a narrow exception[5] on equitable[6] rather than constitutional grounds:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review

---

[5] *Id.* at 1315.

[6] *Id.* at 1318.

> collateral proceeding, a procedural default will not bar a
> federal habeas court from hearing a substantial claim of
> ineffective assistance at trial if, in the initial-review
> collateral proceeding, there was no counsel or counsel in
> that proceeding was ineffective.

*Id.* at 1320.

As *Martinez* noted, Arizona law then required that claims of ineffective representation by trial counsel be raised in—and only in—the initial collateral proceeding. *Id.* at 1314. "Where . . . the initial-review collateral proceeding is the first designated proceeding for a prisoner to raise a claim of ineffective assistance at trial, the collateral proceeding is in many ways the equivalent of a prisoner's direct appeal as to the ineffective-assistance claim." *Id.* at 1317. The Supreme Court concluded that:

> [W]hen a State requires a prisoner to raise an ineffective-
> assistance-of-trial-counsel claim in a collateral proceeding,
> a prisoner may establish cause for a default of an
> ineffective-assistance claim in two circumstances. The first
> is where the state courts did not appoint counsel in the
> initial-review collateral proceeding for a claim of ineffective
> assistance at trial. The second is where appointed counsel
> in the initial-review collateral proceeding, where the claim
> should have been raised, was ineffective under the
> standards of *Strickland v. Washington*, 466 U.S. 668 (1984).

*Id* at 1318.

Arthur sees his situation to be analogous to *Martinez*, and thus seeks to have his failure to meet the limitation period of the AEDPA treated as a procedural default, making it subject to waiver so long as he can demonstrate "cause" and "prejudice."[7] Continuing the reasoning of *Martinez*, Arthur would contend "cause" is provided by the failure of the State to provide him an adequate attorney to assist him in preparing and prosecuting his initial collateral challenge in state court.

Arthur is simply not in the same situation as the petitioner in *Martinez* for at least three reasons. First, when the federal district court, following *Coleman*, concluded that he could not demonstrate "cause," Martinez appealed his case, and when he failed to obtain relief in the circuit court, he applied for and obtained a writ of certiorari from the Supreme Court. Considering his arguments on the application of procedural default to his case, the Supreme Court recognized a limited exception to *Coleman*, thus enabling Martinez to establish "cause." All of this was accomplished within the limitation period of the AEDPA, as it was properly tolled by his pending litigation. Arthur, on the other hand, did not file anything until long after the limitation period provided by the AEDPA had passed.

---

[7] The Court will not address whether Arthur has demonstrated "prejudice" as he has not only failed to show that the change in law he attributes to *Martinez* actually applies to his situation, but he has also failed to demonstrate that such change constitutes "extraordinary circumstances" so as to warrant relief from this Court's previous judgment.

In rendering his December 4, 2002 opinion, Judge Nelson considered and applied the correct law as evidenced by his opinion being affirmed. *See Arthur v. Allen*, 452 F.3d 1234 (11th Cir. 2006).  The Court considered and for good reason rejected Arthur's requested exception to the application of the limitation period provided for in the AEDPA.  *Id.*  In considering Arthur's arguments, Judge Nelson, as well as the Eleventh Circuit, determined that he had failed to demonstrate "actual innocence" and that he had failed to show that he was entitled to either statutory or equitable tolling of the AEDPA limitation period.  *Id.*  The reasoning of these courts is stated in great detail in the previous opinions and thus need not be rehashed at this point. Suffice it to say, it was not the failure to present his claims in state court that subjected his federal habeas action to dismissal; rather, it was his complete failure to file a petition, even in a pro se form, within the federal limitation period along with his inability to demonstrate "actual innocence."

The second major difference between Arthur's situation and that of the petitioner in Martinez is that Arthur **could have** obtained a review of his ineffective-assistance-of-trial-counsel claims with the aid of counsel different from his trial counsel in his direct appeal, as well as in his first collateral challenge.  When Arthur filed the direct appeal of his last conviction and sentence, Alabama—unlike

Arizona—not only permitted such claims to be raised on direct appeal but provided a mechanism by which Arthur was able to assert a claim of ineffective assistance of counsel on direct appeal.  *See Ex Parte Jackson*, 598 So. 2d 895 (Ala. 1992).[8]  Since Arthur was represented by different counsel on his direct appeal, he could have asserted a claim of ineffective assistance of counsel in his direct appeal.[9]  *Gray v. State*, 581 So. 2d 1136 (Ala. Crim. App. 1990) ("Appellant's claim concerning ineffective assistance of counsel also should have been raised on direct appeal, since he was represented on direct appeal by different counsel . . . ."); *see also Flanagan v. State*, 577 So. 2d 559 (Ala. Crim. App. 1990).  In fact, Arthur, through counsel other than trial counsel, requested that the trial court toll the running of the time he was to file a motion for a new trial until such time as he could obtain the trial transcript. (C. at

---

[8] The Alabama Supreme Court overruled *Ex Parte Jackson* in 1996 to the extent that it permitted the trial court to extend the Rule 24.1(b) thirty-day time limit for filing a motion for new trial. Regardless, the Alabama Supreme Court "continue[d] to encourage trial judges to attempt to facilitate newly appointed appellate counsel's efforts to make new trial motions based upon an alleged lack of effective counsel before the Rule 24.1(b) time limit expires." *Ex Parte Ingram*, 675 So. 2d 863, 865 (Ala. 1996).

[9] While Arthur cites the Court to cases such as *Henderson v. State*, 586 So. 2d 1009 (Ala. Cr. App. 1991), (Pet'r Br. at 9) for the proposition that ineffective assistance claims could not be asserted on direct appeal in Alabama, it appears that in those situations the trial counsel also represented the Defendant on his direct appeal.  586 So. 2d at 1010 ("Trial counsel, who Henderson has alleged to have been ineffective, remained counsel of record until after Henderson's Rule 20 petition was filed.")  This was not Arthur's situation.

408.) In the motion, Arthur made clear his intention to assert allegations of ineffective assistance of counsel. (*Id.*)

Arthur did not take advantage of such tolling, choosing instead to file, through yet another attorney, his Motion to Proceed to Appellate Review. (C. at 434.) Through his motion, Arthur expressed concern over the trial court's jurisdiction to toll the time period considering that court's previous denial and then reconsideration of an earlier-filed Motion for New Trial. (*Id.*) Arthur also contended that he had meritorious appellate claims and that "such additional new trial litigation would disadvantage Mr. Arthur by significantly delaying appellate review of his case and the relief from his conviction and death sentence that he expected to obtain." (*Id.*) Whether Arthur was correct concerning the trial court's jurisdiction or not, that court granted his request and allowed him to proceed to direct appeal, where he actually presented at least some allegations of ineffective assistance of counsel. *See Arthur v. State*, 711 So. 2d 1031 (Ala. Crim. App. 1996).

Further, as the Eleventh Circuit recognized in its opinion affirming the judgment Arthur now challenges, "Alabama provides for the appointment of counsel for a petitioner seeking postconviction relief. An indigent petitioner, who desires the assistance of counsel, may seek appointment of counsel if the petitioner's

postconviction relief petition is not summarily dismissed." *Arthur*, 452 F. 3d at 1250.

Arthur failed to do so:

> Arthur did not seek appointment of counsel under Alabama
> Rule of Criminal Procedure 32.7(c) . . . but instead sought
> counsel through letters to various organizations and
> postings on the internet. In the letters and internet
> postings, he asked that the case not be referred to either the
> Southern Center for Human Rights in Atlanta, Georgia, or
> to the Equal Justice Initiative of Alabama, in Montgomery,
> Alabama.   The statute of limitation expired during his
> search.

*Id.* at 1250.

In other words, Arthur could have filed a *pro se* state collateral challenge and

requested the appointment of counsel, but he did not.  Arthur did ultimately obtain

counsel, who filed his first state collateral challenge (albeit after not only the state

limitation period for such challenge had expired but also after the limitations period

provided for in the AEDPA had expired as well).  "Arthur provided no reasons in his

petition for not filing a *pro se* petition while seeking counsel." *Id.*

The third major difference in Arthur's and Martinez's situation is that in

Arthur's case, the issues have been litigated to conclusion. A judgment was entered,

appealed, and affirmed.  For Arthur to reopen the judgment,  he must comply with

Rule 60(b) by first showing "extraordinary circumstances." *Gonzalez*, 545 U.S. at 536.  As discussed above, this has not been done.

**IV.    Conclusion.**

For the reasons stated above, Arthur's motion for relief from the prior judgment dismissing his petition for a writ of habeas corpus is due to be  DENIED. A separate order consistent with this opinion will be entered.

Done this 20th day of June 2012.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
167458